IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SERFACE CARE, INC. d/b/a MYRO § <br> § <br> *Plaintiff*, § <br> § <br> vs. § <br> § Case No. 1:20-cv-948 <br> BERRY GOOD LABS, LLC d/b/a TEXAS § <br> BEAUTY LABS a/k/a THE GOODKIND § <br> CO. § <br> § <br> *Defendant.* § **JURY TRIAL DEMANDED** | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff, Serface Care, Inc. d/b/a Myro ("Myro"), by and through its undersigned attorney, files this Original Complaint and Jury Demand and would respectfully show the Court the following:

**A.   The Parties**

1. Myro is a corporation organized under the laws of the State of Delaware. Myro's principal place of business is 415 Madison Ave., New York, NY 10017.

2. Defendant, Berry Good Labs, LLC d/b/a Texas Beauty Labs a/k/a The Goodkind Co. ("TBL"), is a limited liability company formed under the laws of the State of Texas. TBL's principal place of business is 100 Michael Angelo Way, Suite 900, Austin, TX 78728.

3. TBL's members are Mary E. Berry and Chase C. Berry. The Texas Secretary of State website describes Mary E. Berry as TBL's Managing Member. Additionally, TBL's certificate of formation lists Mary E. Berry and Chase C. Berry as its initial members. Mary E. Berry and Chase C. Berry are residents of the State of Texas. TBL's certificate of formation and

a printout from the Texas Secretary of State website are attached hereto as Exhibit 1 and incorporated herein by reference.  (Ex. 1, https://direct.sos.state.tx.us/corp_inquiry/corp_inquiry-entity.asp?spage=mgmt&:Spagefrom=&:Sfiling_number=800846961&:Ndocument_number=993252840002&:Npgcurrent=1&:Norder_item_type_id=10 (last visited Aug. 31, 2020).)

**B.     Jurisdiction and Venue**

4.      The Court has subject matter jurisdiction over this lawsuit under 28 U.S.C. § 1332(a) because (a) Myro and TBL are citizens of different states and (b) the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      The Court has personal jurisdiction over TBL because TBL has engaged in continuous and systematic activity in this forum by offering for sale and actually manufacturing and selling the deodorant at issue in this lawsuit in this District.  Due to TBL's extensive business activities in Texas and principal place of business in this District, the Court's exercise of personal jurisdiction over TBL does not offend traditional notions of fair play and substantial justice.

6.      Proper venue lies in this Court under 28 U.S.C. § 1391(b)(1)-(2) because TBL resides in this District within the meaning of 28 U.S.C. § 1391(d) and a substantial part of the events or omissions giving rise to the claim occurred in this District.  Specifically, TBL sold and manufactured and contracted to sell and manufacture the deodorant at issue in this lawsuit in this District.

**C.     Factual Background**

7.      Myro re-alleges and incorporates all allegations contained in the paragraphs above by reference.

8.      Myro is a vendor and retailer of deodorant.

9.      TBL is a specialty manufacturer of beauty products, including deodorant.

*i.*     *The Contracts*

10.     On May 3, 2019, Myro and TBL entered into the Manufacturing Agreement (the "Manufacturing Agreement") pertaining to the manufacture of deodorant by TBL for Myro. The Manufacturing Agreement is attached hereto as Exhibit 2 and incorporated herein by reference.

11.     Under Section 9.1 ("Term), the Manufacturing Agreement had an initial term of two years, from May 3, 2019 through May 2, 2021 (the "Initial Term"). (Ex. 2 § 9.1.)

12.     Under Section 9.2 ("Termination for Convenience"), TBL did not have the right to terminate the Agreement without cause any earlier than January 1, 2021. (*Id.* § 9.2.)

13.     In Section 2.1 ("Requirements") of the Manufacturing Agreement, "[Myro] grants to [TBL], and [TBL] hereby accepts, the right and obligation, commencing on the Effective Date and thereafter continuing for the remainder of the Initial Term and any Additional Terms, to manufacture the Products in accordance with the terms of this Agreement." (*Id.* § 2.1.)

14.     Section 2.2 ("Obligation") of the Manufacturing Agreement states, in pertinent part, TBL "shall make available from time to time the necessary production equipment and line capacity to produce and supply the Products in strict compliance with the Specifications and this Agreement." (*Id.* § 2.2.)

15.     Section 5.2 ("Purchase Orders") of the Manufacturing Agreement further required TBL to be able to ship deodorant to Myro not more than thirty calendar days from TBL's receipt of any purchase order from Myro during the Initial Term. (*Id.* § 5.2.)

16.     In Section 2.6 ("Compliance") of the Manufacturing Agreement, TBL agreed, in pertinent part, to "manufacture the Products strictly in compliance with the Specifications, the Formulas and this Agreement." (*Id.* § 2.6.)

17.     Section 8.1 ("Quality Standards") likewise requires, in pertinent part, TBL "to

manufacture, package and handle all Products in strict conformity with the Formula, the Company's Specifications and other quality control and product safety standards, policies and procedures established and promulgated by [Myro] from time to time in its discretion." (*Id.* § 8.1.)

18.     These specifications, policies, and procedures that TBL expressly agreed to manufacture deodorant in strict conformity with include the Quality Assurance Checks specifying minimum temperatures during manufacturing provided by Myro to TBL.

19.     The Quality Assurance Checks provided by Myro to TBL applicable to all deodorant manufactured for Myro by TBL required that the deodorant temperature never fall below 155 degrees Fahrenheit at any point during the manufacturing process.

20.     Section 8.5 ("Product Recall or Withdrawal") of the Manufacturing Agreement further specifies, in pertinent part, that TBL shall bear the cost of any recall or withdrawal if the recall results from TBL's negligence, breach of the Manufacturing Agreement, willful misconduct, or fraud. (*Id.* § 8.5.)

21.     Section 8.4.1 ("General") provides, in pertinent part, that TBL shall correct any lack of conformity identified by Myro within five (5) business days of receiving written notice from Myro. (*Id.* § 8.4.1.)

22.     Section 12.2 ("Insurance") of the Manufacturing Agreement states, in pertinent part, that TBL must maintain appropriate insurance naming Myro as an additional insured and covering TBL's obligations under the Manufacturing Agreement and must provide Myro with a certificate of insurance within forty-five (45) days of execution of the Manufacturing Agreement. (*Id.* § 12.2.)

23.     Section 19 ("Choice of Law") of the Manufacturing Agreement dictates "[t]his Agreement shall be governed and construed in accordance with the internal laws (expressly

excluding conflicts of law provisions) of the State of Texas." (*Id.* § 19.) Further, "[a]ny conflict or controversy arising out of or in connection with this Agreement or any breach thereof shall be adjudicated in the Federal Courts of the United States of America located in Austin, Texas, and competent courts of appeals therefrom." (*Id.*)

24.     On August 8, 2019, after TBL first manufactured defective deodorant for Myro, Myro and TBL entered into Amendment No. 1 to the Manufacturing Agreement (the "Amendment") with an effective date of August 8, 2019. The Amendment is attached hereto as Exhibit 3 and incorporated herein by reference. (Ex. 3 at 1.)

25.     In Section 1 of the Amendment, Myro agreed to a settlement of Myro's claims related to defective deodorant manufactured through the Amendment's effective date, with settlement terms found in the settlement agreement (the "Settlement Agreement") attached as Exhibit A to the Amendment.[1]  (*Id.* § 1.)

26.     In the Settlement Agreement attached to the Amendment, TBL agreed to extend a credit in the amount of $1,028,577.13 to be applied against at least $6,700,000.00 of future purchase orders that the parties contemplated Myro would submit under the Manufacturing Agreement. (*Id.* Ex. A.)

27.     Like the Manufacturing Agreement, the Settlement Agreement has a Texas choice of law provision and requires adjudication of disputes arising therefrom "in the Federal courts of the United States of America located in Austin, Texas, and competent courts of appeal therefrom." (*Id.* Ex. A.)

---

[1] Myro and TBL did not receive a Passing Third-Party Stability Test on or before December 31, 2019, making Section 2 of the Amendment void under the express terms of Section 2(c). (Ex. 3 § 2(c).)

    ii.    *TBL's Breaches of Duties*

28. TBL repeatedly failed to perform its obligations under the Manufacturing Agreement, Amendment, and Settlement Agreement.

29. TBL first breached its obligations by consistently manufacturing unstable, unmerchantable deodorant not fit for its intended purpose, both before and after the effective date of the Amendment and Settlement Agreement. Deodorant manufactured by TBL both before and after the effective date of the Settlement Agreement became soft over a relatively short period of time, often leaking out of its container, and did not meet required shelf life minimum standards.

30. After numerous customer complaints, returns, and recalls, Myro obtained failed stability tests from a third-party tester—SM2 Enterprises, LLC ("SM2")—for Batch 781912, Cabin #5 fragrance, manufactured by TBL on December 12, 2019, and Batch 302910, Big Dipper fragrance, manufactured by TBL on January 6, 2020. SM2's third-party testing established that the TBL deodorant became unstable, unacceptably soft, and unusable within six weeks of the manufacture date.

31. Conversely, deodorant manufactured by SM2 and Myro with the same formulas but with appropriate equipment that controlled temperature throughout the duration of manufacturing remained stable during testing by SM2.

32. The issues with the deodorant manufactured by TBL caused Myro to suffer substantial direct and indirect damages and reputational harm and lose profits and customers, including its largest customer and only national retailer—Target Corporation. Myro had no choice but to recall all deodorant manufactured by TBL, both before and after execution of the Settlement Agreement, at substantial expense to Myro.

33. TBL also breached the Manufacturing Agreement by failing to have the production

equipment and line capacity needed by Myro during the remainder of the Manufacturing Agreement's Initial Term and by repudiating its obligations under the Manufacturing Agreement under Section 2.610 of the Texas Business and Commerce Code.

34.     TBL did not have the appropriate production equipment to manufacture stable, merchantable deodorant, as required by the Manufacturing Agreement.  TBL lacked adequate equipment to control temperature throughout the manufacturing process and maintain temperatures above 155 degrees Fahrenheit during manufacturing, as also required by the Quality Assurance Checks.  As illustrative examples, TBL's mixing tanks did not have coated jackets or covers to maintain temperature and water volume; TBL's mixers were underpowered and improperly sized and had inadequate mixing blades; and TBL did not use temperature-controlled filling lines.

35.     TBL's inadequate equipment and inability to control temperature caused the observed instability of deodorant manufactured by TBL.

36.     TBL, in fact, admitted that it did not have adequate equipment or line capacity to manufacture conforming deodorant or meet Myro's production requirements.  On April 29, 2020, Eric Korman—TBL's representative—e-mailed Greg Laptevsky—Myro's Chief Executive Officer—that TBL would not have an automated filler until fall 2020 and that TBL could not even manufacture a pilot batch for Myro until fall 2020.  On a telephone call with John Wergeles—Myro's Chief Operating Officer—on June 19, 2020, Korman again confirmed that TBL needed an automatic filler to manufacture deodorant for Myro and could not produce a pilot batch until October 2020 at the earliest.

37.     TBL's communications confirmed that it does not have adequate equipment or line capacity to manufacture Myro deodorant, in breach of the Manufacturing Agreement, Amendment,

and Settlement Agreement, and further constitute an anticipatory repudiation of the Manufacturing Agreement, Amendment, and Settlement Agreement under Section 2.610 of the Texas Business and Commerce Code. If TBL could not even manufacture a test batch for at least five months, TBL certainly could not ship conforming deodorant to Myro within thirty days of any purchase order under Section 5.2 of the Manufacturing Agreement. This further constitutes a breach of the Settlement Agreement as TBL is unable to provide the benefit of the $1,028,577.13 credit for which Myro bargained.

38. TBL's inability fulfill its contractual obligations and anticipatory repudiation related to Myro's future production requirements have caused Myro to suffer substantial damages.

39. TBL has not remedied any of its breaches described herein within five (5) business days of receiving multiple written notices from Myro, as required by Section 8.4.1 of the Manufacturing Agreement.

40. TBL has also breached Section 12.2 of the Manufacturing Agreement by failing to obtain insurance coverage for its breaches of the Manufacturing Agreement described herein. TBL did not provide Myro with a certificate of insurance within forty-five (45) days of execution of the Manufacturing Agreement and, upon information and belief, has not tendered Myro's claims to any applicable insurance carrier.

### D. Conditions Precedent

41. Myro avers that all conditions precedent with respect to Myro's claims against TBL have been performed or have occurred. Fed. R. Civ. P. 9(c).

### E. Breach of Contract

42. Myro re-alleges and incorporates all allegations contained in the paragraphs above by reference.

43. TBL entered into contracts with Myro in which TBL agreed to, among other obligations, the contractual duties described in Sections 2.1, 2.2, 2.6, 5.2, 8.1, 8.4.1, 8.5, 9.1, 9.2, 12.1.1, 12.2 of the Manufacturing Agreement, Section 1 of the Amendment, and Section 1 of the Settlement Agreement.

44. TBL breached its obligations under the Manufacturing Agreement, Amendment, and Settlement Agreement, including, but not limited to, those obligations described herein.

45. TBL's breaches of contracts caused Myro to suffer damages.

**F.    Breach of Express Warranties**

46. Myro re-alleges and incorporates all allegations contained in the paragraphs above by reference.

47. TBL and Myro entered into a contract for the sale of goods, as described above.

48. TBL made affirmations of fact and promises to Myro, including, but not limited to, the affirmations of fact and promises described in Sections 2.1, 2.2, 2.6, 5.2, 8.1, 8.4.1, 8.5, 9.1, 9.2, 12.1.1, 12.2 of the Manufacturing Agreement, Section 1 of the Amendment, and Section 1 of the Settlement Agreement.

49. These affirmations of fact and promises related to the goods and became part of the basis of the bargain between TBL and Myro, creating express warranties under Section 2.313(a)(1) of the Texas Business and Commerce Code.

50. TBL made descriptions of the goods to Myro, including, but not limited to, the descriptions described in Sections 2.1, 2.2, 2.6, and 8.1 of the Manufacturing Agreement.

51. These descriptions of the goods were made part of the basis of the bargain, creating express warranties under Section 2.313(a)(2) of the Texas Business and Commerce Code that the goods would conform to TBL's descriptions.

52. TBL breached the foregoing express warranties when the deodorant failed to conform to TBL's affirmations, promises, descriptions, and express warranties.

53. TBL's breach of express warranties caused Myro to suffer damages.

**G.   Breach of Implied Warranties of Merchantability**

54. Myro re-alleges and incorporates all allegations contained in the paragraphs above by reference.

55. TBL and Myro entered into a contract for the sale of goods, as described above, from which arose an implied warranty of merchantability under Section 2.314 of the Texas Business and Commerce Code.

56. TBL is a merchant with respect to goods of the kind—deodorant—that TBL sold to Myro.

57. TBL breached the implied warranty of merchantability because the goods that TBL sold to Myro:

      i.    did not pass without objection in the trade under the contract description;

      ii.    are fungible goods that were not of fair average quality within the description;

      iii.    were not fit for the ordinary purposes for which such goods are used;

      iv.    did not run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved;

      v.    were not adequately contained, packaged, and labeled as the agreement may have required; and

      vi.    violated other implied warranties arising from the course of dealing and usage of trade.

58. TBL's breach of the implied warranty of merchantability caused Myro to suffer damages.

### H. Breach of Implied Warranties of Fitness for a Particular Purpose

59. Myro re-alleges and incorporates all allegations contained in the paragraphs above by reference.

60. TBL and Myro entered into a contract for the sale of goods, as described above, from which arose an implied warranty of fitness for a particular purpose under Section 2.315 of the Texas Business and Commerce Code.

61. At the time of contracting for the sale of deodorant, TBL had reason to know the particular purpose for which Myro required the goods.

62. Myro relied on TBL's skill or judgment in selecting or furnishing suitable goods.

63. TBL breached the implied warranty of fitness for a particular purpose when the goods that it sold Myro failed to be suitable for the particular purpose required by Myro.

64. TBL's breach of the implied warranty of fitness for a particular purpose caused Myro to suffer damages.

### I. Negligence

65. Myro re-alleges and incorporates all allegations contained in the paragraphs above by reference.

66. TBL owed a duty to Myro to exercise ordinary care in manufacturing the deodorant that TBL sold to Myro.

67. TBL breached its duty to Myro.

68. TBL's breach of its duty was the actual and proximate cause of Myro's injury.

69. Myro suffered actual and foreseeable damages as a result of TBL's negligent acts

and omissions.

**J.      Unjust Enrichment**

70.    Myro re-alleges and incorporates all allegations contained in the paragraphs above by reference.

71.    TBL received a benefit in the form of payments by Myro to TBL.

72.    TBL received this benefit at Myro's expense.

73.    Under the circumstances, it would be unjust and unconscionable for TBL to retain this benefit without commensurate compensation to Myro.

**K.      Request for Attorney Fees**

74.    Myro re-alleges and incorporates all allegations contained in the paragraphs above by reference.

75.    As a result of TBL's failure to pay the amounts due, Myro was compelled to employ the undersigned law firm to represent it in this lawsuit.  Section 38.001 of the Texas Civil Practices and Remedies Code authorizes Myro's recovery of attorney fees from TBL because Myro asserts contract-based claims.  *See Med. City Dallas. Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 63 (Tex. 2008) (holding that a party that prevails on an express warranty claim may recover attorney fees under the Texas fee-shifting statute); *Howard Indus., Inc. v. Crown Cork & Seal Co.*, 403 S.W.3d 347, 352 (Tex. App.-Houston [1st Dist.] 2013, no pet.) (deciding that a party who prevails on an implied warranty claim seeking economic damages may recover attorney fees).  Timely demand for payment was made by e-mail and certified mail, return receipt requested, no later than July 22, 2020 and was refused, as required by Section 38.002 of the Texas Civil Practices and Remedies Code.

**JURY DEMAND**

76.     Myro demands a jury trial under Rule 38 of the Federal Rules of Civil Procedure on all issues so triable, including on all claims and defenses.

**PRAYER FOR RELIEF**

WHEREFORE, Myro prays and respectfully requests that the Court enter a final judgment awarding Myro actual damages, pre-judgment interest, post judgment interest, reasonably and necessary attorney fees under Section 38.001 of the Texas Civil Practices and Remedies Code, *et seq.*, costs of suit, and any further relief to which Myro may be entitled.

Dated:  September 15, 2020            Respectfully submitted,

LAMBOURN LAW FIRM, PLLC

*/s/ Robin R. Lambourn*
_____

Robin R. Lambourn
Texas Bar No. 24055814
LAMBOURN LAW FIRM, PLLC
P.O. Box 9123
Denver, Colorado 80209
Telephone: (720) 507-1590
Facsimile: (720) 634-1050
E-Mail:  rlambourn@lambournlaw.com

ATTORNEY-IN-CHARGE FOR PLAINTIFF
SERFACE CARE, INC. D/B/A MYRO