# AMENDMENT NO. 1 TO THE
# MANUFACTURING AGREEMENT

This Amendment No. 1 to the Manufacturing Agreement (this "**Amendment No. 1**") is made and entered into as of August 8, 2019 (the "**Amendment No. 1 Effective Date**") by and between (a) Berry Good Labs LLC (d/b/a Texas Beauty Labs), a Texas limited liability company ("**Manufacturer**"), and (b) Serface Care, Inc. (d/b/a Myro), a Delaware corporation ("**Company**").  Together, Manufacturer and Company shall be referred to as the "**Parties**" and individually as a "**Party**".

## RECITALS

A. Company and Manufacturer entered into that certain Manufacturing Agreement dated as of May 3, 2019 (the "**Agreement**").

B. Manufacturer manufactured and delivered certain Product pursuant to Purchase Order #3191 (the "**Disputed Order**"), and Company has rejected the Product delivered pursuant to such Disputed Order as defective.

C. In order to resolve the dispute between the Parties relating to the Disputed Order and make provision for additional orders contemplated by Company, Company and Manufacturer now desire to amend the Agreement in order to (1) settle and resolve all claims between them relating to the Disputed Order pursuant to the Confidential Settlement Agreement and Release Agreement attached hereto as Exhibit A (the "**Settlement Agreement**"), and (2) establish the Parties' rights and responsibilities relating to certain new committed and irrevocable purchase orders for Products as further outlined herein.

C. Unless otherwise stated in this Amendment No. 1, all capitalized terms used herein but not defined herein shall have the meanings attributed to them in the Agreement.

## AGREEMENT

**NOW, THEREFORE,** for and in consideration of the mutual promises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

Section 1. Settlement of Disputed Order.  Simultaneously with entering into this Amendment No.1, the Parties shall also enter into the Settlement Agreement attached as Exhibit A in order to resolve the dispute relating to the Disputed Order.

Section 2. Special Terms and Conditions for Committed Special Orders; Testing.

    (a) In connection with the resolution of the Disputed Order and in consideration of Manufacturer providing to Company the Settlement Credit, Company hereby agrees to place each of the purchase orders with Manufacturer set forth in the attached Exhibit B in the amounts, with the  payment terms and for the maximum price set forth therein (collectively, the "**Committed Special Orders**") and Manufacturer agrees to supply the Products set forth in each purchase order by the Shipment Date mutually agreed and set forth therein.  Purchase Orders 3191-2 and 3190-2 shall be submitted by Company simultaneously with, or immediately following the execution of, this Amendment No.1 by the Parties.  The Parties acknowledge and agree that all Committed Special Orders are binding commitments to place these orders on or before December 31, 2020, and to supply the Products set forth therein in accordance with the provisions thereof, and once placed such orders may not be canceled by either Party without the consent of the other Party except due to a breach of the Settlement Agreement or the Agreement, as amended herein, in each case, which breach has not been

cured (if cureable) within thirty (30) days following the giving of written notice to the breaching party. In addition, the Parties acknowledge that the Committed Special Orders are being prepared under extreme time-pressure due to third party demands and there is a risk of product issues as a result, which risk is being assumed (except as provided in this Section 2) entirely by Company. Therefore, the Parties hereby covenant and agree that, notwithstanding any other term of the Agreement to the contrary, all Products manufactured and delivered by Manufacturer pursuant to the Committed Special Orders shall be delivered on an "as-is, where-is" and "with all faults" basis, all warranties and covenants of Manufacturer, including without limitation those provided for under the Agreement (including Section 8.1-8.5) and warranties of merchantability, usage or suitability or fitness for a particular purpose are expressly disclaimed and such Committed Special Orders, once delivered, are entirely non-refundable; provided that, Manufacturer represents and warrants to Company that the Products manufactured under the Committed Special Orders will be prepared using the formula or formulas set forth on Exhibit C; and provided further, however, that with respect to any Committed Special Orders placed by Company following receipt by the Parties of a Passing Third Party Stability Test (as defined below) with respect to the formula being used, Manufacturer shall provide all warranties, representations and other assurances set forth in the Agreement with respect to such Committed Special Orders and any future Committed Special Orders using such formula. A "**Passing Third Party Stability Test**" with respect to any particular formula means a review and test by a mutually approved third party testing company of such formula for stability and production that results in a "passing" determination by such third party testing company.

(b) In connection with the Committed Special Orders, the Parties agree that as each of the Committed Special Orders is placed and paid for by Company in cash, the Settlement Credit (as defined in the Settlement Agreement) amount will be applied to such Committed Special Orders as set forth in Exhibit B.

(c) Notwithstanding anything in this Amendment No. 1 to the contrary, if the Parties shall not have received a Passing Third Party Stability Test by on or before December 31, 2019, this Section 2 automatically shall be void and of no further force or effect.

Section 3. Effectiveness of Agreement. Except as expressly provided herein, nothing in this Amendment No. 1 shall be deemed to waive or modify any of the provisions of the Agreement, any amendment or addendum thereto, or any rights of Company. In the event of any conflict between the Agreement, this Amendment No. 1 or any other amendment or addendum thereof, the document later in time shall prevail.

Section 4. Counterparts. This Amendment No. 1 may be executed in two or more identical counterparts, each of which shall be deemed to be an original and all of which taken together shall be deemed to constitute this Amendment No. 1 when a duly authorized representative of each Party has signed a counterpart. The Parties may sign and deliver this Amendment No. 1 by facsimile or email transmission. Each Party agrees that the delivery of this Amendment No. 1 by facsimile or email transmission shall have the same force and effect as delivery of original signatures and that each Party may use such facsimile or electronic signatures as evidence of the execution and delivery of this Amendment No. 1 by all Parties to the same extent that an original signature could be used.

\*     \*     \*     \*     \*

IN WITNESS WHEREOF, the duly authorized representatives of the Parties have caused this Amendment No. 1 to be duly executed as of the date first written above.

**BERRY GOOD LABS LLC D/B/A TEXAS BEAUTY LABS**

By: *Mary Berry* (DocuSigned by: F996615D1A294B2...)
Name: Mary Berry
Title: Chief Executive Officer
Dated: 8/14/2019

**SERFACE CARE, INC. D/B/A MYRO**

By: *Greg Laptevsky*
Name: _____
Title: _____
Dated: 08/16/2019

*[Signature Page to Amendment No.1 to Manufacturing Agreement]*

## Exhibit A
## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release ("**Agreement**") is entered into as of August 8, 2019 (the "**Effective Date**"), by and between (a) Berry Good Labs LLC (d/b/a Texas Beauty Labs), a Texas limited liability company ("**Manufacturer**"), and (b) Serface Care, Inc. (d/b/a Myro), a Delaware corporation ("**Company**"). Collectively, Manufacturer and Company shall be referred to as the "**Parties**" and individually as a "**Party**". Capitalized terms used by not defined in this Agreement have the meanings given such terms in the Manufacturing Agreement between the Parties dated May 3, 2019, as amended by Amendment No.1 to Manufacturing Agreement dated of even date herewith ("**Amendment No. 1**") (as so amended, the "**Manufacturing Agreement**").

### BACKGROUND

WHEREAS, Company have entered into that certain Manufacturing Agreement dated May 3, 2019, pursuant to which Manufacturer agreed to manufacture, and Company agreed to engage and pay Manufacturer to manufacture, certain Products;

WHEREAS, pursuant to purchase order # 3191, Company ordered 500,000 units of deodorant with ▇▇▇ formula" and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (the "**Disputed Order**"); and

WHEREAS, following the manufacture and delivery of the Products subject to the Disputed Order, Company asserted that the Products subject to the Disputed Order were defective and alleged certain claims against Manufacturer arising out of the manufacture of such Products (including without limitation, claims that such Product formula was unstable and/or that such Products did not meet required shelf life minimum standards) (collectively, such claims relating to Products manufactured with ▇▇▇▇▇▇▇▇▇▇ the "**Claims**").

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, Manufacturer and Company hereby agree as follows:

### AGREED TERMS



██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████

3.  Mutual Releases. In consideration of the extension of the Settlement Credit, Company, on behalf of itself, its predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns, and their past, present, and future officers, directors, shareholders, trustees, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, hereby release and discharge Manufacturer, together with its predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns and successors in interest, and all persons acting by, through, under or in concert with them, and each of them, from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, that Company has, or may have had, against Manufacturer, whether or not apparent or yet to be discovered, or that may hereafter develop, for any acts or omissions related to or arising from the Claims (the "**Company Dispute**");

In consideration of Company foregoing the exercise of its legal rights to the extent contemplated by this Agreement, Manufacturer, on behalf of itself, its predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns, and their past, present, and future officers, directors, shareholders, trustees, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, hereby release and discharge Company, together with its predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns and successors in interest, and all persons acting by, through, under or in concert with them, and each of them, from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, that Manufacturer has, or may have had, against Company, whether or not apparent or

yet to be discovered, or that may hereafter develop, for any acts or omissions related to or arising from the Claims (together with the Company Dispute, the "**Dispute**");

This Agreement resolves any claim for relief that is or could have been alleged, no matter how characterized, including, without limitation, compensatory damages, damages for breach of contract, bad faith damages, reliance damages, liquidated damages, damages for humiliation and embarrassment, punitive damages, costs and attorneys' fees related to or arising from the Dispute. Notwithstanding the foregoing, nothing in this Agreement shall be construed as, or constitute, a release of any Party's rights to enforce the terms of this Agreement.

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

5.      Acknowledgment of Settlement. The Parties, as broadly described in paragraphs 2 and 3 above, acknowledge that (i) the consideration set forth in this Agreement, which includes, but is not limited to, the Settlement Credit, is in full settlement of all claims or losses of whatsoever kind or character that they have, or may ever have had, against the other Party, as broadly described in paragraphs 2 and 3 above, solely relating to the Dispute and (ii) by signing this Agreement, and accepting the consideration provided herein and the benefits of it, each Party is giving up forever any right to seek further monetary or other relief from the other Party, as broadly described in paragraph 3 above, for any acts or omissions up to and including the Effective Date, as set forth in paragraph 3, solely relating to the Dispute.

6.      No Admission of Liability. The Parties acknowledge that the Settlement Credit and Company Release was agreed upon as a compromise and final settlement of disputed claims and that the Settlement Credit is not, and may not be construed as, an admission of liability by Manufacturer and is not to be construed as an admission that Manufacturer engaged in any wrongful, tortious, or unlawful activity or breached any contractual obligation to Company. Manufacturer specifically disclaims and denies (a) any liability to Company and (b) engaging in any wrongful, tortious, or unlawful activity, or breaching any contractual obligation to Company.

7.      Confidentiality of Agreement.  The Parties expressly understand and agree that this Agreement and its contents (including, but not limited to, the fact of payment and the amounts to be paid hereunder) shall remain confidential and shall not be disclosed to any third party whatsoever, except the Parties' counsel, accountants, financial advisors, tax professionals retained by them, any federal, state, or local governmental taxing or regulatory authority, and the Parties' respective management, officers, and Boards of Directors, and except as required by law or order of court or for enforcement of the Parties' respective rights under this Agreement.  Any person identified in the preceding sentence to whom information concerning this Agreement is disclosed is bound by this confidentiality provision and the disclosing party shall be liable for any breaches of confidentiality by persons to whom it has disclosed information about this Agreement in accordance with this paragraph.  Nothing contained in this Agreement shall prevent any Party from stating that the Parties have "amicably resolved all differences"; provided, however, that in so doing, the Parties shall not disclose the fact or amount of any payments made or to be made hereunder and shall not disclose any other terms of this Agreement or the settlement described herein.  If any subpoena, order, or discovery request (the "**Document**

**Request"**) is received by any of the Parties hereto calling for the production of the Agreement, such Party shall promptly notify the other Party hereto prior to any disclosure of same. In such case, the subpoenaed Party shall: (1) make available as soon as practicable (and in any event prior to disclosure), for inspection and copying, a copy of the Agreement it intends to produce pursuant to the Document Request unless such disclosure is otherwise prohibited by law; and (2) to the extent possible, shall not produce anything in response to the Document Request for at least ten (10) business days following such notice. If necessary, the subpoenaed Party shall take appropriate actions to resist production, as permitted by law, so as to allow the Parties to try to reach agreement on what shall be produced. The Parties agree that confidentiality is a material inducement for this Agreement, the breach of which will result in irreparable injury, such that one or both Parties may seek injunctive relief without the necessity of proving actual harm or posting a bond.



10.     <u>Governing Law and Choice of Forum</u>. This Agreement shall be governed and construed in accordance with the internal laws (expressly excluding conflicts of law provisions) of the State of Texas. Any conflict or controversy arising out of or in connection with this Agreement or any breach thereof shall be adjudicated in the Federal courts of the United States of America located in Austin, Texas, and competent courts of appeals therefrom.

12.     <u>Nonrevocable</u>. The Parties agree that this Agreement is not subject to revocation.

**READ THE FOREGOING DOCUMENT CAREFULLY. IT INCLUDES A RELEASE OF**

A-4

**CLAIMS**.

\* \* \* \*

**IN WITNESS WHEREOF**, and intending to be legally bound, each of the Parties hereto has caused this Agreement to be executed as of the date(s) set forth below.

**BERRY GOOD LABS LLC D/B/A TEXAS BEAUTY LABS**

By: *Mary Berry*
Name: Mary Berry
Title: Chief Executive Officer
Dated: 8/14/2019

**SERFACE CARE, INC. D/B/A MYRO**

By: *Greg Laptevsky*
Name: _____
Title: _____
Dated: 08/16/2019

*[Signature Page to Confidential Settlement Agreement and Release]*



DocuSign Envelope ID: F5E71809-9956-499D-B0AF-29059C9E5012

# Exhibit C



4